UNITED STATES of America,

v.

Eddie J. MATHIS, Appellant.

No. 90–3272.

United States Court of Appeals, District of Columbia Circuit.

Argued March 27, 1992.

Decided May 1, 1992.

Rehearing and Rehearing En Banc Denied June 15, 1992.

R. Kenneth Mundy, Washington, D.C., for appellant.

DeMaurice F. Smith, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Russell D. Duncan, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee.

Before WALD, EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Eddie J. Mathis raises two issues on appeal: First, whether the district court erred in concluding that appellant's prior conviction for robbery in violation of D.C.CODE ANN. § 22–2901 was a "violent felony" within the meaning of 18 U.S.C. § 924(e), which provides for a fifteen-year mandatory minimum prison sentence for a felon convicted of possessing a firearm or ammunition who has also been convicted of three prior violent felonies; and second, whether the district court abused its discretion in denying appellant's motion to withdraw his plea of guilty upon realizing that the district judge intended to sentence him to the mandatory minimum of fifteen years in prison. Although we find that the district court did not abuse its discretion in denying appellant's motion to withdraw his plea of guilty, we cannot conclude, on the record as it currently exists, that the robbery conviction was a violent felony within the meaning of the statute. We therefore remand for further consideration of the sentence.

## I. BACKGROUND

On February 21, 1990, appellant was driving himself and three passengers in his truck in southeast Washington, D.C. As

they passed an unmarked police car, the officers recognized one of appellant's passengers as an escaped felon. The officers stopped the truck and subsequently searched all of the occupants as well as the truck itself. The three passengers were each wearing bullet-proof vests and carrying loaded firearms.[1] The officers found that appellant was also wearing a bullet-proof vest. In a pocket of the vest, the officers found two loaded magazines, each containing eight rounds of ten millimeter ammunition. Although the officers found no weapon on appellant's person, the officers did retrieve a ten millimeter handgun from behind the front passenger seat.[2]

The officers discovered that appellant had a substantial criminal record, including several felonies. On March 27, 1990, appellant was charged in one count of a multiple-count indictment with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).[3] The indictment also

alleged that appellant had been convicted of three prior felonies in the Superior Court of the District of Columbia: On August 31, 1973, he was convicted of one count of assault with intent to commit robbery and two counts of robbery; on July 2, 1975, he was convicted of robbery; and on May 10, 1976, he was convicted of assault on a police officer while armed. In light of these three prior convictions, the indictment charged appellant with violation of § 924(e)(1), subjecting appellant, if convicted, to a mandatory minimum sentence of fifteen years imprisonment.[4]

## A. The "Violent Felony"

Appellant moved to strike the portion of the indictment invoking § 924(e)(1) on the grounds that the 1975 robbery conviction was not a "violent felony."[5] Appellant had been convicted of robbery under section 22–2901 of the D.C.Code.[6]

---

1. The underlying facts of the case against the three passengers are discussed more fully in *United States v. Taylor*, 937 F.2d 676 (D.C.Cir. 1991).

2. The government proffered that if appellant's case had gone to trial, the arresting officer would have testified that as appellant was stopping his truck, the officer "observed Mr. Mathis reach into what appeared to be the waist area of his pants with his right hand, take his right hand out of that area and reach behind him towards the area where Merle Watson was seated," *i.e.*, directly behind the front-passenger seat. Transcript (D.D.C. Sept. 5, 1990) at 21. This is where the 10 millimeter handgun was found.

3. The statute provides:
 It shall be unlawful for any person—
 (1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ...
 *to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.*
 18 U.S.C. § 922(g) (1988).

4. Section 924(e)(1) reads as follows:
 In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000

and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.
18 U.S.C. § 924(e)(1) (1988).

5. The term "violent felony" is defined to mean
 any crime punishable by imprisonment for a term exceeding one year ... that—
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
 (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
 *Id.* § 924(e)(2)(B) (1988).

6. Section 22–2901 states that
 [w]hoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery....
 D.C.Code Ann. § 22–2901 (1973). Together with his accomplice Shirley Hooks, appellant had robbed a woman on a moving Metro bus by "sandwiching" her between them and, through "stealthy seizure," took thirty dollars from her purse. *See Hooks v. United States*, 373 A.2d 909, 910 (D.C.1977).

On May 14, 1990, the district court below denied appellant's motion and concluded that the 1975 offense was a "violent felony." *See United States v. Mathis,* 739 F.Supp. 15 (D.D.C.1990). The district court interpreted section 22–2901 as requiring the government to prove "force or violence" as a necessary element of the offense. The court also acknowledged that cases interpreting this D.C. statute support the conclusion that "pickpockets have been convicted of robbery under section 22–2901, rather than of the lesser offense of larceny, for stealthy grabs at property from a victim's pocket where the victim was totally unaware." *Id.* at 19 (citing *Spencer v. United States,* 116 F.2d 801 (D.C.Cir.1940), and *Turner v. United States,* 16 F.2d 535 (D.C.Cir.1926)).

The district court emphasized that it did not base its decision that the 1975 robbery conviction was a "violent felony" on the underlying facts of that conviction. Relying on *United States v. Sherbondy,* 865 F.2d 996 (9th Cir.1988), and *United States v. Headspeth,* 852 F.2d 753 (4th Cir.1988), the court concluded that "[i]n deciding whether an offense is a 'violent felony' under the definition in subsection (i) of § 924(e)(2)(B), a court must examine the statute of the offense and determine whether it has 'as an element' the use of force; the court should *not* examine the actual conduct underlying the offense." *Mathis,* 739 F.Supp. at 17 (emphasis in original).[7]

### B. *The Guilty Plea*

At the motions hearing prior to the district court's ruling of May 14, 1990, appellant argued that he was entitled to receive "credit" for time he had served in prison in connection with a murder charge for which he was ultimately acquitted.[8] The following colloquy occurred:

THE COURT: Well, I can give you an answer on that in this way and it will have to be this way.

MR. MUNDY: Yes, sir.

THE COURT: Until I have, A, a conviction, if I have one, and B, I have a presentence report I can do no more than to say to you that I'll make some allowance. You can be sure, however, it will not be an allowance that doesn't [sic] obviate punishment for this offense if there's a conviction.

MR. MUNDY: I understand, Your Honor.

THE COURT: And that's about the best I can say to you at this stage, but I do believe assuming that the Government confirms in due course the facts that you've recited and which I've accepted, that some allowance is appropriate and I'll have to weigh that in my discretion in the light of everything else that I then know, if we come to that point.

MR. MUNDY: All right, sir.

THE COURT: So that's where that stands and we'll just leave it that way.

Transcript (D.D.C. May 9, 1990) at 7–8.

On September 4, 1990, the day before trial was to commence in the case, appellant's counsel once again inquired about the court's intentions:

MR. MUNDY: Your Honor, just so the court, and I'm not asking for any declaratory ruling or advice from the court on this but the problem comes to this, Mr. Mathis is faced with and, of course, the plea offer made to him is for an offense that normally carries the mandatory min-

---

7. The district court did not have the benefit of the Supreme Court's decision in *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), which was decided two weeks later. The Court in *Taylor* followed the rule uniformly adopted by the courts of appeals—and by the district court in this case—that "§ 924(e) mandates a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Id.* at 600, 110 S.Ct. at 2159.

8. In September 1981, appellant had been arrested and charged with murder. He was held without bond, and subsequently tried, convicted, and sentenced to a term of 20 years to life. While he served that sentence, the District of Columbia Court of Appeals unanimously reversed the conviction on the grounds of prosecutorial misconduct. The case was remanded for a new trial, and appellant was acquitted. He was finally released from custody in March 1988 after having served six and one-half years in prison.

imum of 15 years. We've presented to the court questions with respect to certain reductions that we feel he's entitled to below the mandatory minimum of credit and the most principal of these was the fact that he served seven [sic] and a half years in prison based on the prosecutorial misconduct of the prosecutor in that case and I've made the record available to the court, the transcript, and—

THE COURT: It is, but as I've told you that's a matter of—for further discussion at sentencing.

MR. MUNDY: Yes, sir.

Transcript (D.D.C. Sept. 4, 1990). Later, in response to counsel's question about the availability of the two-point reduction for acceptance of responsibility should appellant decide to plead, the court said the following:

THE COURT: Well, as that matter was briefly mentioned to me before I felt it was a question for sentence and not the trial.

MR. MUNDY: Yes, sir, I know.

THE COURT: But from the terms of the statute it would appear that there be [sic] no minimum but simply a flat sentence under Title 18; that that would deprive anyone who has three prior convictions of any opportunity to raise the two percent or whatever it is, particularly because the statute also is quite severe in saying that the sentence cannot be in any way suspended or altered. It's a mandatory sort of figure.

*Id.* at 35.

On September 5, 1990, instead of going to trial, appellant pled guilty to the superseding indictment charging him with possession of a firearm and ammunition in violation of § 922(g)(1).[9] During his advice to the defendant, as required by Rule 11(c) of the Federal Rules of Criminal Procedure, the trial judge reiterated:

THE COURT: You understand this case is governed by the Sentencing Guideline provisions. Has that been explained to you by Mr. Mundy?

THE DEFENDANT: Yes, sir.

THE COURT: And we'll get a—we will get a computation made of various guidelines which the court will examine in determining what the sentence is going to be. You'll have a chance to correct or change anything that is said. I want you to realize two things about this matter that under the rulings that the court has made there is a minimum requirement here that the court is obliged to impose and that is a sentence of 15 years with no parole. Do you understand that?

THE DEFENDANT: Yes, I understand.

Transcript (D.D.C. Sept. 5, 1990) at 16.

On November 16, 1990, appellant appeared before the district court for sentencing. Appellant's counsel argued that, even with the mandatory minimum sentence, the district court was permitted to give appellant credit for "time served" on the charge for which he was acquitted:

So what I'm saying is then if the court feels that this is a close question the only way to protect the interests of Mr. Mathis in case there's going to be a later development in the law within the period of time that the Government can appeal, the only way the Government can protect the interests of Mr. Mathis is to give him the mandatory minimum and give him credit for six and a half years against it.

If the court is in error about that I'm sure the Government will get the Court of Appeals to correct it. If there's any development in the law after that this court on correcting the sentence would still have jurisdiction to do something about it. If you ruled to the contrary and find out now that you don't have the

---

9. The superseding indictment was filed July 26, 1990, and it charged appellant with possession of both a firearm *and* ammunition. Appellant pled guilty only to possessing the ammunition. *See* Transcript (D.D.C. Sept. 5, 1990) at 19. The district court nevertheless stated that, if the sentence were calculated under the Guidelines, ap-

pellant would be entitled to a two-level downward adjustment for acceptance of responsibility because "although he pled only to possession of ammunition, he now acknowledges possession of the gun as well." Sentencing Memorandum and Order (D.D.C. filed Nov. 16, 1990) at 1.

authority to credit him and you give us a 15 year sentence, well, our only last hope is with the Court of Appeals.

Transcript (D.D.C. Nov. 16, 1990) at 17–18. After further discussion the court ruled as follows:

I'm obliged to tell you that I've considered your arguments and persuasive as they are in terms of the background of this defendant and the problems that he's had I feel that I'm stuck with a legal—a lack of legal power to go beyond what the statute permits and I'm going to have to so rule.

. . . . .

MR. MUNDY: Your Honor, I was just talking with the defendant and the defendant has asked me if I would advise the court the he wants to withdraw his plea of guilty. He figures that he would not do any worse with a trial than the mandatory minimum....

... [W]hen we had the hearings before[,] he got the impression that he would be given some kind of consideration because of his prior wrongful conviction. He indicated this to me and I told him that if he wanted to move to withdraw his plea he should do it before his sentence is imposed and allow me to file something before the court imposes sentence because once the court imposes sentence, of course, he cannot move to withdraw his plea with this court as easily.

*Id.* at 20, 21–22. The district court denied appellant's motion to withdraw his plea of guilty.

THE COURT: Anything you want to say to me, Mr. Mathis?

THE DEFENDANT: Yes, I stand by my request and I withdraw my plea.

THE COURT: Well, I will not permit it, and I'm going to impose a sentence of 15 years, no parole, a three[-]year period of supervised release thereafter. I'm required to impose a $50 special assessment because this is a felony. There's no basis that I have to impose any fine.

There's no indication you have any resources. I will impose no fine.

*Id.* at 25.

Appellant argues that he had entered the guilty plea "based upon reasonable reliance on the Court's statements at the May 9, 1990 motion hearing." Brief of Appellant (filed Sept. 16, 1991) ("Appellant's Brief") at 14. These statements, according to appellant, "had clearly indicated that he would receive credit for the time served when sentence was passed for this offense." *Id.* at 13. When he learned that the district judge would not give him any credit, he moved to withdraw his guilty plea. Appellant argues that the district court abused its discretion in denying the motion.

## II. DISCUSSION

The district court ruled, as a matter of law, that the 1975 robbery conviction was a "violent felony." We review that ruling *de novo.* However, the district court's denial of appellant's motion to withdraw his guilty plea is reviewed for abuse of discretion. *See United States v. Loughery,* 908 F.2d 1014, 1017 (D.C.Cir.1990).

### A. *Applicability of Mandatory Minimum Sentence*

The Supreme Court has recently interpreted the meaning of "violent felony" under § 924(e). In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Court considered whether a conviction for second-degree burglary under Missouri law was sufficient to qualify as a "violent felony." The Court rejected the view adopted by the court of appeals that "burglary" under § 924(e)(2)(B)(ii) means whatever a state chooses to define as burglary. The Court reasoned that Congress intended a common, uniform definition of "burglary" so that the imposition of the fifteen-year mandatory minimum penalty would not depend on what the state in which the previous conviction occurred happened to call "burglary." "Without a clear indication that with the 1986 amendment Congress intended to abandon its general approach of using uniform categorical defi-

nitions to identify predicate offenses," *Taylor*, 495 U.S. at 591, 110 S.Ct. at 2154, the Court interpreted the statute as incorporating a federal definition of burglary.

We therefore hold that an offense constitutes "burglary" for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to "generic" burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.

*Id.* at 602, 110 S.Ct. at 2160.

In this case, we are faced with the similar question of whether appellant's 1975 robbery conviction qualifies as a predicate offense for the imposition of the mandatory minimum penalty under § 924(e). To answer this question, we must first determine what Congress intended to include in the category of "violent felon[ies]" against the person, and then we must examine whether appellant's 1975 robbery conviction belongs in that category.

### 1. *"Use of Physical Force"*

Under the enhancement provision, a defendant in possession of a firearm or ammunition who has previously been convicted of three violent felonies receives a mandatory minimum sentence of fifteen years. A "violent felony" is a crime punishable by more than one year imprisonment and that

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (1988).

It is evident from this definition that Congress created two subcategories of pri-

or criminal conduct: First, there are felonies against the *person* that have as an element the use or threat of physical force; and, second, there are felonies against *property* (such as burglary, arson, extortion, etc.) that present a serious potential risk of physical injury. Whereas *Taylor* focused on the category of felonies against property, we must examine what Congress intended by its broad definition of felonies against the person, *i.e.*, felonies that have "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i).

■ A brief examination of the legislative history of this definition of violent felonies against the person reveals that Congress intended that the penalty enhancement provision apply primarily to career criminals who have committed violent crimes. The enhancement provision was first enacted as chapter 18 of the Comprehensive Crime Control Act of 1984 (known as the Armed Career Criminal Act of 1984), Pub.L. No. 98–473, §§ 1801–1803, 98 Stat. 1976, 2185 (codified at 18 U.S.C. app. § 1202 (Supp. II 1984)).[10] Instead of referring to violent felonies and serious drug offenses, the original version of the provision referred to previous convictions "for robbery or burglary, or both."[11] Furthermore, it defined robbery to mean

any felony consisting of the taking of the property of another from the person or presence of another by force or violence, or by threatening or placing another person in fear that any person will imminently be subjected to bodily injury.

18 U.S.C. § 1202(c)(8) (Supp. II 1984).

■ Congress clearly intended to invoke the common-law definition of "robbery."[12]

---

**10.** This section was recodified at § 924(e) by the Firearms Owners' Protection Act, Pub.L. No. 99–308, § 104(a), 100 Stat. 449, 458–59 (1986).

**11.** The original version of the enhancement statute provided that

a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convic-

tions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both ... shall be fined not more than $25,000 and imprisoned not less than fifteen years....

18 U.S.C. app. § 1202(a) (Supp. II 1984).

**12.** Under the common law, "robbery" consisted of all six elements of larceny—a (1) trespassory (2) taking and (3) carrying away of the (4)

In its report on the bill that became the Armed Career Criminal Act of 1984, S.REP. No. 190, 98th Cong., 1st Sess. (1983) ("*1983 Senate Report*"), the Senate Judiciary Committee stated that the definition of "robbery" was taken from a previous bill which had been discussed in considerable detail in an earlier Judiciary Committee report. *Id.* at 20. In that earlier report, the Committee expressly acknowledged that the definition of robbery "follows present Federal law in adopting the terminology of common law robbery and thus makes it a crime to take property from another by force or violence, or by threatening or placing another person in fear." S.REP. No. 307, 97th Cong., 1st Sess. 668 (1981) ("*1981 Senate Report*").[13]

Under the common law, the use or threatened use of force or violence is a necessary element of the crime of robbery, whereas "[t]he taking of property from the person of another by stealth, *i.e.*, without force or threatened force, does not constitute robbery. Thus, the picking of a person's pocket, *using only such force as is necessary to lift and remove the property from the pocket,* is not robbery." 4 TORCIA, *supra,* § 479 at 65 (footnote omitted) (emphasis added); *see also* 2 LAFAVE & SCOTT, *supra,* § 8.11(d)(1) at 445–46 ("[t]aking the owner's property by stealthily pick-

ing his pocket *is not taking by force* and so is not robbery; but if the pickpocket or his confederate jostles the owner, or if the owner, catching the pickpocket in the act, struggles unsuccessfully to keep possession, the pickpocket's crime becomes robbery" (footnotes omitted) (emphasis added) ).

The definition of "robbery" discussed in the *1981 Senate Report* required the government to prove, as an element of the offense,

> the use of "force *and* violence" or the act of threatening or placing another person in fear. The traditional requirement of a violent (as opposed to merely forceful) taking is designed to exclude those situations such as pickpocketing or removing property from a drunk or unconscious person, which do not pose special dangers of violence and, thus, are more appropriately dealt with as theft.

*1981 Senate Report* at 671 (emphasis in original). By explicitly invoking the *1981 Senate Report* when discussing the definition of "robbery," Congress clearly intended to exclude pickpocketing or stealthy seizure from its definition of "robbery" in the Armed Career Criminal Act of 1984.[14]

The 1984 version of the enhancement provision was amended to its current form by Subtitle I (known as the Career Criminals Amendment Act of 1986) of the Anti–

---

personal property (5) of another (6) with intent to steal it—plus two additional requirements: (7) that the property be taken from the person or presence of the other and (8) that the taking be accomplished by means of force or putting in fear. 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.11 at 438 (1986) (footnote omitted); *see also* ARNOLD H. LOEWY, CRIMINAL LAW § 6.08 at 107 (2d ed. 1987) ("Robbery is larceny from a person or in his presence by force or by the threat of immediate force."); 4 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 469 at 40 (14th ed. 1981) ("a defendant commits robbery when, with the intent permanently to deprive, he trespassorily takes and carries away the personal property of another from the latter's person or presence by the use of force or threatened force").

**13.** The definition of robbery discussed in the *1981 Senate Report* is the following:

> A person commits an offense if he takes property of another from the person or presence of another by force and violence, or by threat-

ening or placing another person in fear that any person will imminently be subjected to bodily injury.

S. 1630, 97th Cong., 2d Sess. § 1721(a) (1982) (version of bill as reported by *1981 Senate Report*).

**14.** The fact that the definition of robbery changed from use or threatened use of "force *and* violence" to "force *or* violence" is not significant. The *1983 Senate Report* made no mention of the change from the conjunctive to the disjunctive; on the contrary, it explicitly stated that the 1983 definition of robbery was "taken from" the 1981 version, implying that there was *no meaningful difference* between them. Furthermore, the common-law definition of robbery did not consider that pickpocketing alone involved sufficient force to satisfy that element of the offense. For this reason, Congress was perhaps unnecessarily cautious in 1981 when it chose to require the use or threatened use of "force *and* violence." The use of the disjunctive—"force *or* violence"—would have also excluded pickpocketing under the common law.

Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1402, 100 Stat. 3207, 3207-39 to –40. The House Committee on the Judiciary explained the reason for expanding the predicate offenses beyond robbery and burglary:

> At [the] hearing a consensus developed in support of an expansion of the predicate offenses to include serious drug trafficking offenses under both State and Federal law and violent felonies, generally. This concept was encompassed in [the bill] by deleting the specific predicate offenses for robbery and burglary and adding as predicate offenses [drug trafficking] ... and violent felonies under Federal or State law if the offense has an element the use, attempted use or threatened use of physical force against a *person*. This latter provision would include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc.
>
> The other major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of "violent" felony. The Subcommittee agreed to add the crimes punishable for a term exceeding one year that involve conduct that presents a serious potential risk of physical injury to others. This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person.

H.R.Rep. No. 849, 99th Cong., 2d Sess. 3 (1986) (emphasis in original) (reporting favorably H.R. 4885, a compromise bill that, with an amendment not relevant to this case, was finally enacted).

Upon introducing the bill that was one of the sources of the Career Criminals Act of 1986, Senator Specter stated that "the statute can be greatly more effective if it is amended—as the Department of Justice urges—to apply to career criminals whose prior offenses may be murder, rape, or heroin smuggling." 132 Cong.Rec. 7698 (1986) (statement of Sen. Specter on S. 2312). In introducing a virtually identical bill in the House, Representative Wyden stated that it "will give us another opportunity to zero in on the worst criminal offenders in our society." *Id.* at 7878 (statement of Rep. Wyden on H.R. 4639). The legislative history of the amendment supports the conclusion that Congress was primarily concerned with broadening the scope of the provision to encompass truly serious crimes.[15] We conclude that when Congress amended the enhancement provision to cover all violent felonies that have "as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i) (1988), it did not intend to include felonies in which the use of force was *de minimis* or "which do not pose special dangers of violence and, thus, are more appropriately dealt with as theft." *1981 Senate Report* at 671.[16]

---

**15.** *See Armed Career Criminal Legislation: Hearing on H.R. 4639 and H.R. 4768 Before the Subcomm. on Crime of the House Comm. on the Judiciary,* 99th Cong. 2d Sess. 8 (1986) (statement of Rep. Wyden) ("[I]t seems to me just simple logic to include crimes of violence as potential predicate offenses. It does not make a lot of sense to say that a referral under the act is possible for a three-time bank robber but not an habitual offender with prior convictions for rape or murder."); *The Armed Career Criminal Act Amendments: Hearing on S. 2312 Before the Subcomm. on Criminal Law of the Senate Comm. on the Judiciary,* 99th Cong., 2d Sess. 55 (1986) (statement of Ronald D. Castille, District Att'y, Philadelphia) ("[w]e want to take the most dangerous offender and the person with the longest record and put them in the Armed Career Criminal Act").

**16.** Although we believe it is clear that Congress did not intend to include a crime not involving the use or threat of actual physical force as a "violent felony" within the meaning if § 924(e), to the extent that the meaning of the term is ambiguous, we shall follow the rule of lenity and interpret the statute as excluding such crimes as pickpocketing. "[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22, 73 S.Ct. 227, 229, 97 L.Ed. 260 (1952); *see also United States v. Bass,* 404 U.S. 336, 347–48, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971); *Ladner v. United States,* 358 U.S. 169, 177–78, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958).

### 2. Robbery by "Stealthy Seizure"

 The Supreme Court in *Taylor* established two principles for lower courts to follow when interpreting and applying § 924(e): The first, which we have already considered, is that Congress intended that the three predicate offenses justifying the mandatory minimum penalty trigger the enhancement provision regardless of the label they may have received in the state of conviction; the second is that when deciding whether a prior conviction qualifies as a predicate offense, the sentencing court must look only to the statutory definition, not to the underlying facts or evidence presented. *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160. Appellant was convicted in 1975 of "robbery" in violation of D.C.CODE ANN. § 22–2901 (1973). The district court below properly recognized that it "should *not* examine the actual conduct underlying the offense" when determining whether to include it as a predicate offense under § 924(e). *Mathis*, 739 F.Supp. at 17 (emphasis in original). So the particular circumstances under which the 1975 crime was committed are irrelevant for the purposes of determining whether the conviction was for a felony that includes as an essential element the use, attempted use, or threatened use of physical force.

 In 1975, the D.C. robbery statute read as follows:

Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than two years nor more than fifteen years.

D.C.CODE ANN. § 22–2901 (1973). Appellant argues that this statute should be understood as applying to two separate categories of theft: The first—theft involving "force or violence"—occurs when the defendant acts "against resistance"; the second—theft involving "stealthy seizure or snatching"—occurs when the defendant engages in "pickpocketing," that is, without force or violence. The district court reject-

ed this reading of the statute, concluding instead that the phrase "[w]hoever by force or violence" applies to each category of theft. *See Mathis*, 739 F.Supp. at 18 ("Thus, 'stealthy seizure' is considered a form of 'force or violence.'").

We agree with the district court's interpretation of the statutory language. The statute applies only to one who "by force or violence ... take[s] from the person or immediate actual possession of another anything of value." The dependent clause—"whether against resistance or by sudden or stealthy seizure or snatching"—clearly modifies "force or violence." The statute was intended to change the common-law definition of robbery to include "an unlawful taking of property from the person of another, by sudden or stealthy seizure or snatching, without violence or putting in fear, and with the exercise of only sufficient force to accomplish the actual taking of the property." *Turner v. United States*, 16 F.2d 535, 536 (D.C.Cir. 1926).

But even though the statute must be interpreted to include "stealthy seizure" as a form of "force or violence," such a modification of the common-law definition of robbery still effects a change in the "generic" meaning of "force or violence." As the district court recognized, "a D.C. jury may convict a defendant of a section 22–2901 robbery offense for an act of pickpocketing." *Mathis*, 739 F.Supp. at 19. Indeed, courts interpreting section 22–2901 have consistently held that "the requirement for force is satisfied within the sense of the statute by an actual physical taking of the property from the person of another, even though without his knowledge and consent, and though the property be unattached to his person." *Turner*, 16 F.2d at 536; *see also Spencer v. United States*, 116 F.2d 801, 802 (D.C.Cir.1940) (force used to remove money from pocket of trousers that the victim had removed and placed on a chair "is sufficient to satisfy the statutory requirement of 'force or violence'"); *Harris v. United States*, 41 F.2d 976 (D.C.Cir.1930) (despite fact that evidence demonstrated defendants used no more

force than was necessary to lift wallet from pocket, evidence was sufficient to sustain robbery conviction under D.C. law).

While, as the district court acknowledged, "force against another person is a constituent part of any § 22–2901 offense," *Mathis*, 739 F.Supp. at 19, it is not true that whatever a state happens to mean by "force" will invariably correspond to the meaning of that term which Congress drafted into § 924(e). Although "force or violence" are not generally considered to be ambiguous or controversial terms, under D.C. law, a defendant may be convicted of a crime requiring proof of "force or violence" when the only force used is that necessary to lift a wallet from a pocket. Congress, in its capacity as the District of Columbia's legislature, may, of course, prosecute pickpocketing in any way it chooses, within the limits of the Constitution. But "stealthy seizure" under section 22–2901 is not a "violent felony" within the meaning of § 924(e), because the proof required to satisfy the element of force in the local statute falls below that which Congress intended in enacting § 924(e).

To hold otherwise would produce unacceptable consequences: A conviction for "robbery" under section 22–2901—which has "force" as an element of the crime—would be treated as a predicate offense under § 924(e) while a conviction for "larceny" in another state—which would not require proof of force—would not be treated as a predicate offense even though the criminal conduct in both cases—pickpocketing—is identical. But as *Taylor* makes clear, the differences in the criminal law from state to state must not be permitted to frustrate the intent of Congress to apply the mandatory fifteen-year minimum penalty in a consistently uniform manner.

In *Taylor*, the Court remanded to the district court because the record was not clear as to what crime the defendant had been previously convicted of.[17] The requirement that the sentencing judge look no further than the statutory elements of the crime may, on occasion, require more than simply reading the statute:

This categorical approach, however, may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary. For example, in a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160.

Similarly, if the indictment and/or jury instructions in Mathis' 1975 "robbery" conviction demonstrate that the jury necessarily found that appellant used or threatened to use physical force in taking the money from the victim, then the government may rely on that conviction as one of the three prior "violent felonies." However, if the jury was never required to find that true physical force was used or threatened—as opposed to the "force" minimally necessary to reach into a purse and take out the money—then the 1975 conviction was not a violent felony and the mandatory minimum penalty does not apply. The record on appeal contains only a copy of the "Judgment and Commitment Order" identifying the case number and indicating that appellant had pled not guilty to "Robbery" and was subsequently found guilty by a jury. *See* Attachment to Letter from Russell D. Duncan to R. Kenneth Mundy (dated July 22, 1990). Because *Taylor* tells us that we may not look into the underlying evidence supporting the 1975 conviction to determine

---

**17.** Taylor had been convicted twice of second-degree burglary under Missouri law. But during the period in which the burglaries had been committed, Missouri had seven different statutes under which one could be charged with second-degree "burglary." *See Taylor*, 495 U.S. at 578 n. 1, 110 S.Ct. at 2148 n. 1. Because

some of these statutes would not have satisfied the federal, "generic" definition of burglary required for purposes of applying § 924(e), the Court remanded to determine what the jury was actually required to find for the prior "burglary" convictions.

whether or not sufficient force was involved to qualify as a violent felony, the only permissible inquiry is whether or not the jury found a use or attempted use or threatened use of physical force that would satisfy the uniform, federal definition of "violent felony." [18] If the record of the previous conviction is ambiguous—*i.e.*, if it is possible, on the basis of the indictment or jury instructions, to conclude that the element of force was satisfied solely by a jury finding that the defendant had lifted money out of a purse—then the conviction may not be used as a predicate offense for purposes of § 924(e). We thus find it necessary, under *Taylor*, to remand this case to the district court for an examination of the record of Mathis' 1975 robbery conviction to see whether it satisfies the uniform, federal standard of "use of force" thereby qualifying as a "violent felony" under § 924(e).

### B. *The Request to Withdraw the Guilty Plea*

■ Under Rule 32(d) of the Federal Rules of Criminal Procedure,

[i]f a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

FED.R.CRIM.P. 32(d). Although the decision to grant a motion to withdraw a plea before sentencing is committed to the sound discretion of the district court, there are several factors which this court has identi-

fied as particularly relevant to that decision. First, "where the motion ... assert[s] legal innocence, presentence withdrawal should be rather freely allowed." *United States v. Barker*, 514 F.2d 208, 220 (D.C.Cir.) (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). The assertion of innocence, however, does not entitle defendant to an automatic withdrawal of his plea. *Id.*

The second factor "is the possible existence of prejudice to the government's case as a result of the defendant's untimely request to stand trial." *United States v. Russell*, 686 F.2d 35, 39 (D.C.Cir.1982). The defendant's reasons for withdrawing the plea "must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case." *Barker*, 514 F.2d at 222.

Finally, and most importantly, the district court must consider whether there was some defect in the original plea. "It should go without saying that the standard [for granting a motion to withdraw a guilty plea] is very lenient when the plea was entered unconstitutionally or contrary to Rule 11 procedures." *Id.* at 221. A guilty plea cannot be considered voluntary under Rule 11 "if it is induced by threats or misrepresentation, or if the defendant is not 'fully aware of the direct consequences' of the plea." *Russell*, 686 F.2d at 38 (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)).[19]

Appellant asserts that his guilty plea on September 5, 1990, was based on the as-

---

**18.** The model criminal jury instructions for the District of Columbia include the following instruction:

If the possession [of the property] was acquired by sudden or stealthy seizure or snatching, the requirement of force or violence is satisfied if the defendant exercised sufficient force to accomplish the actual physical taking of the property from the person of the complainant even though it was taken without the complainant's knowledge and even though the property was unattached to his person.

DISTRICT OF COLUMBIA BAR ASS'N, CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA 154 (2d ed.

1973) (Instruction 4.61). If it appears, on remand, that this (or a similar) instruction was given in connection with the 1975 robbery conviction, that conviction would not qualify as a predicate offense for purposes of § 924(e).

**19.** Rule 11 provides that "[t]he court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally and in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement." FED.R.CRIM.P. 11(d).

sumption that the court would give him credit for the six and one-half years he served in connection with the murder charge of which he was subsequently acquitted. *See* Appellant's Brief at 16. Appellant argues that as soon as he learned that the district judge would not reduce the mandatory minimum sentence for time already served, he sought to withdraw his plea. It was, according to appellant, an abuse of discretion for the court to deny his motion.

Appellant relies heavily on the colloquy between appellant's counsel and the court on May 9, 1990, in which the district judge said that he would "make some allowance" for time served. *See* Transcript (D.D.C. May 9, 1990) at 7–8. This colloquy occurred *before* the court had determined that the 1975 robbery conviction was a "violent felony" and that appellant would therefore be subject to the mandatory minimum sentence. But as the district court itself noted in denying appellant's motion for reconsideration, "the Court had no idea what the applicable guideline range would be and whether it would be above the 15–year minimum." Memorandum and Order (D.D.C. Dec. 19, 1990) at 5. In other words, even with the mandatory minimum, the court might have had the possibility of taking into account the time served on the murder charge in sentencing appellant at the low end of the Guidelines range.[20]

When appellant inquired, on the day before his guilty plea, whether the court would consider arguments that would entitle him to a sentence below the mandatory minimum, the court responded that "that's a matter of—for further discussion at sentencing." Transcript (D.D.C. Sept. 4, 1990) at 28.[21] Appellant argues that the reason he did not seek to withdraw his guilty plea prior to the day of sentencing (November 16, 1990) was because he had been assured by the court that there would be "further discussion" of these arguments "at sentencing."

But "further discussion" is precisely what occurred at sentencing. Fully thirteen of the twenty-nine pages of the sentencing hearing transcript are filled with arguments by appellant's counsel about the authority of the court to reduce appellant's sentence below the mandatory minimum under the circumstances of the case. *See* Transcript (D.D.C. Nov. 16, 1990) at 8–21. Before he knew what the applicable guidelines range would be and before he knew what arguments appellant's counsel would make concerning his authority to reduce the sentence below the mandatory minimum, the district judge promised that "further discussion" would occur at sentencing; he never promised that appellant would receive credit for time served. The court never promised to give appellant credit, and there is nothing in this record to support the conclusion that appellant reasonably relied on statements by the court that he would receive credit.

Applying the three-factor test to the circumstances here, we find that while it is true that the government has not been unreasonably prejudiced by a delay were this case to proceed to trial, appellant neither asserts his innocence of the underlying crime nor claims that he pled guilty on the basis of threats or promises in violation of Rule 11(c). The district court did not

**20.** Indeed, in a post-sentencing memorandum, the district court indicated the following: ·

> With a base offense level of 12, enhancement because of the Career Offender provision to level 29 and criminal history category VI, and credit for acceptance of responsibility under the guidelines, Mr. Mathis would face a sentence in the rage [sic] of 130–162 months. If this were a guideline sentence, ... the Court would have determined that rather than selecting the top of the guidelines it would be appropriate to select the bottom of the guidelines, that is, 130 months, to reflect the mitigating fact that Mr. Mathis served approximately 79 months for an offense for which he

> was eventually acquitted after reversal of his initial conviction.

Sentencing Memorandum and Order (D.D.C. Nov. 16, 1990) at 3–4.

**21.** As quoted above, the court also intimated, in response to a question about the availability of a reduction for acceptance of responsibility, that the reduction would probably not be available "particularly because the statute also is quite severe in saying that the sentence cannot be in any way suspended or altered. It's a mandatory sort of figure." Transcript (D.D.C. Sept. 4, 1990) at 35.

abuse its discretion in denying appellant's motion to withdraw the guilty plea. It appears that the only reason appellant sought to withdraw the guilty plea was the prospect of a fifteen-year mandatory minimum sentence. This, alone, would have been insufficient grounds for the district court to justify granting a motion to withdraw a guilty plea. *Loughery*, 908 F.2d at 1017 ("fact that the defendant waited to withdraw her plea until after determining the tenor of the punishment meted out to co-defendants is a factor militating against allowing withdrawal"); *United States v. McKoy*, 645 F.2d 1037, 1040 n. 3 (D.C.Cir. 1981) (it may be "fair and just" to deny a pre-sentence motion for withdrawal of a guilty plea when a defendant seeks to withdraw his plea after he "has reason to believe his sentence will be more severe than he anticipated at the time of his guilty plea"). It is most certainly insufficient grounds for us, on review, to conclude that the district court abused its discretion.

### III. CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*