**UNITED STATES of America**

v.

**Edwin ABREU, Appellant.**

**No. 91–3199.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1992.

Decided May 26, 1992.

Jonathan Zucker, Washington, D.C., appointed by the Court, for appellant.

Elizabeth H. Danello, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, and Wendy L. Wysong, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before: SILBERMAN, BUCKLEY, and WILLIAMS, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Edwin Abreu was charged with possession with intent to distribute more than 50 grams of crack cocaine. On the day trial was scheduled to begin, he decided to plead guilty. Prior to sentencing, he reversed himself and sought to withdraw his plea, so that he could stand trial. The district court denied his motion for plea withdrawal, and we affirm.

I.

Abreu is a 27–year–old citizen of the Dominican Republic. According to the government's factual proffer at the plea proceeding, Abreu and his Dominican companion Luis Mejia were arrested based upon the tip of a confidential informant. The informant had told the police that two black males from the Dominican Republic would be transporting a large quantity of crack under the hood of a red Merkur in a compartment near the firewall. The informant described the car in detail and provided its license plate number. When the defendants were later observed getting out of the car described by the informant, police officers and DEA agents stopped them. Abreu, who had been driving, tried to throw the keys to the Merkur underneath a nearby parked car when he noticed the police officers. Upon searching the Merkur, the officers found approximately 868

grams of crack in a compartment near the firewall under the hood, exactly where the informant had said the drugs would be. They arrested Abreu and Mejia, who were subsequently indicted.

Both men failed to appear for arraignment, and bench warrants were issued. Abreu was apprehended nearly four months later. He initially pleaded not guilty, and a trial date was set. On the Friday prior to his scheduled Monday trial, the prosecution informed Abreu's counsel that it possessed audio tapes of Abreu negotiating to sell the crack found under the hood of the car. The government told Abreu's counsel that it intended to introduce these tapes into evidence at trial and that the person with whom Abreu was allegedly conversing on the tapes would also testify. When he learned of these developments the morning his trial was scheduled to begin, Abreu informed the district court that he wished to change his plea to guilty.

The district court accepted the new guilty plea. At the plea proceeding, the court secured the necessary assurances from Abreu that his plea was knowing and voluntary. Defense counsel stated to the court that he had explained the potential sentence, as well as the general framework of the Sentencing Guidelines, to Abreu. The judge confirmed with Abreu that he understood the potential penalties and asked him whether he understood the nature of the charges against him, namely, possession with intent to distribute crack. Abreu responded through an interpreter, "Yes." The government made a factual proffer, which detailed the facts of the arrest—the informant's information, Abreu's driving of the car, his effort to throw away the keys upon being stopped, and the ultimate recovery of the drugs consistent with the information provided by the informant. The proffer did not specifically allege that Abreu knew the drugs were in the car or had the ability to exercise dominion or control over them. When asked whether he had anything to add to the proffer or whether he wished to contradict it in any way, Abreu responded, "No."

One week later, during an interview with his presentence report writer, Abreu asserted his innocence and his desire to withdraw the guilty plea. His counsel filed a motion to withdraw the guilty plea, which was denied. After securing new counsel, Abreu filed a motion to reconsider the denial of the original plea withdrawal motion. This motion set forth different grounds for withdrawing the plea, but it too was denied. Abreu was thereafter sentenced to 188 months in prison and five years' supervised release.

## II.

■ Although the legal standard for permitting presentence withdrawal of a guilty plea is a lenient one, *see United States v. Loughery*, 908 F.2d 1014, 1017 (D.C.Cir. 1990), the district court enjoys broad discretion to decide whether or not withdrawal is appropriate. *See id.* Abreu has not advanced any reason that would have required the district court to grant his motion.

■ A guilty plea may be withdrawn prior to sentencing only when the defendant has a "fair and just reason" for doing so. FED.R.CRIM.P. 32(d). Of course, if it were shown that the plea was not knowing or voluntary, that explanation would suffice. *See McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969). As a corollary to this proposition, if the initial plea proceeding was not in substantial compliance with FED. R.CRIM.P. 11, then the defendant should almost always be allowed to withdraw his plea. *See United States v. Barker*, 514 F.2d 208, 221 (D.C.Cir.) (en banc), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).

■ Abreu argues that his plea proceeding violated Rule 11 in two respects. First, appellant contends that the district court failed to ensure that he was adequately apprised of "the nature of the charge" to which he was pleading guilty, as required by Rule 11(c)(1). Although the district judge specifically inquired whether Abreu understood "the nature of the charge ... of possession with intent to distribute co-

caine base, also known as crack," Abreu nonetheless argues that he lacked an "understanding of the essential elements of the crime charged." *McCarthy*, 394 U.S. at 471, 89 S.Ct. at 1173. Specifically, Abreu asserts that he was unaware of the knowledge element of the crime; he states that the plea colloquy was inadequate to ensure that he understood he had to possess the crack under the hood of his car knowingly and that constructive possession required that he be able to exercise "dominion or control" over the drugs. *See United States v. Pardo*, 636 F.2d 535, 548 (D.C.Cir. 1980).

We think this contention without merit. Entirely apart from the fact that the indictment charged that Abreu had "knowingly" possessed crack with the intent to distribute it, it is not credible that Abreu was unaware, based on the colloquy he had with the district judge, that knowledge was an element of his crime. Abreu was specifically informed during the plea proceeding that intent to distribute the drugs was an element of the crime, and he has never disputed that he understood this aspect of the offense. We cannot imagine how Abreu could have been aware that he was charged with intending to distribute drugs without also being aware that he had to know he possessed them.

Abreu's second contention based on Rule 11 is that the district court accepted his guilty plea without assuring itself that there was an adequate "factual basis for the plea," as required by Rule 11(f). Here, too, the basis of the claim is Abreu's asserted lack of knowledge of the drugs. Abreu argues that there was insufficient evidence in the prosecution's proffer to establish that he knew there was crack hidden under the hood of the car. The purpose of Rule 11(f), however, is simply to ensure that "the conduct which the defendant admits constitutes the offense charged in the indictment," so the factual basis of which the rule speaks is merely sufficient evidence from which a reasonable jury could conclude that the defendant committed the crime. *Notes of the Advisory Committee on Rules*, 1966 Amendment

to Rule 11. We have little difficulty concluding that the government's proffer included sufficient evidence of constructive possession to support a conviction. That proffer, which appellant heard and admitted, offered to show that when he was stopped by law enforcement officers, Abreu attempted to throw away the keys to the car he was driving. Evidence of evasive action taken by a defendant upon being confronted by a police officer, especially when coupled with physical proximity and access to a stash of drugs, is sufficient to permit an inference of guilty knowledge. *See United States v. Gibbs*, 904 F.2d 52, 56–57 (D.C.Cir.1990); *United States v. Hernandez*, 780 F.2d 113, 117 (D.C.Cir.1980).

■ Since in our view the district court properly accepted Abreu's guilty plea as voluntary and intelligent, we turn to the question whether the court was obliged to allow withdrawal of his guilty plea for other reasons. In assessing whether a presentence plea withdrawal would be "fair and just," we look to several factors. Whether the defendant asserts his legal innocence and the extent to which the government has been prejudiced in its ability to prosecute the case are two of the most important. *See Barker*, 514 F.2d at 200–22.

■ The government has conceded that it would not have suffered any "substantial prejudice" had Abreu been permitted to withdraw his plea, and Abreu did assert his innocence to his probation officer following his initial plea. Nonetheless, *Barker* makes very clear that the defendant does not have an "automatic right" to presentence plea withdrawal. *Id.* at 221. The district court retains some discretion to deny a withdrawal motion, even when the defendant asserts a plausible legal defense and the government has suffered no prejudice. In these circumstances, the district court must allow the defendant to withdraw his plea only when the defendant offers a "tenable explanation for withholding the alleged defense at the time of his original plea hearing." *United States v.*

*McKoy,* 645 F.2d 1037, 1039 (D.C.Cir.1981).[1]

Such an explanation cannot merely be grounded in legal strategy; it must legitimately explain why the defendant, who formerly admitted his guilt, should now be entitled to maintain his innocence. *See id.* A simple shift in tactics or change of heart is not an adequate reason to force the government to incur the expense, difficulty, and risk of trying a defendant who has already voluntarily and intelligently waived his right to a trial. *See, e.g., United States v. Figueroa,* 757 F.2d 466, 475 (2d Cir.), *cert. denied,* 474 U.S. 840, 106 S.Ct. 122, 88 L.Ed.2d 100 (1985). More must be shown. *See, e.g., United States v. Russell,* 686 F.2d 35, 42 (D.C.Cir.1982) (district court must permit defendant to withdraw guilty plea prior to sentencing when the prosecution has affirmatively misrepresented the consequences of a guilty plea). As we said in *Barker,*

> There are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal.... Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim.

514 F.2d at 221.

■ Abreu's effort to withdraw his guilty plea appears to be based on just such a decision to alter his tactics and present a theory of acquittal to a jury. The reason he offers for disavowing his earlier guilty plea is that he originally pleaded only because he "lost confidence in his attorney's ability to mount an effective defense to the government's 'ambush' created by the last minute disclosure of the tapes." Appellant's Br. at 17. He claims that after having been surprised by the tapes on the morning of trial, he "mistakenly believed that, because of his mere presence in the automobile containing drugs, his scienter defenses were without merit." *Id.* at 16. Now that he has thought matters through more carefully, Abreu argues, he must be relieved of the consequences of his former admission.

This explanation for appellant's *volte-face* is, at bottom, founded on little more than a reevaluation of the strength of the government's case and his own chances for mounting a successful defense. That kind of explanation is not sufficient to compel the district court to permit withdrawal of the plea. *See, e.g., United States v. Daniel,* 866 F.2d 749, 752 (5th Cir.1989). Abreu's claim that he lost confidence in his attorney seems more than a little strained. It appears that his loss of confidence was not so much in his attorney as in his case. The tapes confused him not because they obscured the fact that he had a scienter defense—any such defense would have been available in precisely the same form prior to the disclosure of the tapes—they "confused" him because they destroyed that defense. A belated desire to assert a meritless defense does not entitle a defendant to withdraw his plea, even when the government would suffer no prejudice. *See United States v. Carr,* 740 F.2d 339, 345–47 (5th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). We have, in any event, held that a defendant's fear that his counsel was not adequately prepared to try the case does not constitute an explanation requiring the district judge to permit him to withdraw his plea. *See McKoy,* 645 F.2d at 1040; *cf. United States v. Pellerito,* 878 F.2d 1535, 1537–38 (1st Cir.1989) (inadequacy of counsel must amount to constitutionally ineffective assistance in order to entitle the defendant to plea withdrawal). The district court did not, therefore, abuse its discretion in holding Abreu to his original admission of guilt, and we affirm its judgment.

*It is so ordered.*

---

**1.** In *Barker,* we suggested that, absent prejudice to the government, any "subjectively reasonable" explanation would suffice. *Barker,* 514 F.2d at 225 n. 15. *McKoy* clarified this arguably oxymoronic standard.