UNITED STATES of America, Appellee,

v.

Mark Allen FORD, Appellant.

No. 92–3227.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 22, 1993.
Decided May 25, 1993.

Mark J. Rochon, Washington, DC, for appellant.

Renate D. Staley, Asst. U.S. Atty., of the bar of the Court of Appeals of Maryland, pro hac vice, by Special Leave of the Court, with whom Jay B. Stephens, U.S. Atty., at the time the brief was filed, John R. Fisher, Thomas C. Black and Sherri L. Evans, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before: EDWARDS, RUTH BADER GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

Mark Allen Ford was charged with five violations of federal narcotics and firearms laws. On the day trial was scheduled to begin, he entered a plea of guilty to one of the narcotics and one of the firearms charges. Ford subsequently filed two motions to withdraw his guilty plea, both of which were denied by the District Court. He was then sentenced to 63 months incarceration and 3 years of supervised release. Ford now challenges the District Court's denials of his motions to withdraw his plea. Because we find merit in his appeal, we vacate the judgment of the District Court, and remand the case with instructions that Ford be allowed to plead anew.

## I. BACKGROUND

On January 10, 1992, at approximately 7:00 a.m., officers of the FBI and the Metropolitan Police Department executed an arrest warrant for Ford at an apartment located at 1911 Maryland Avenue, N.E., in the District of Columbia. Once inside the apartment, the officers saw Ford, dressed only in pajama pants, emerge from a darkened bedroom. Ford was arrested immediately. One FBI agent entered the bedroom, where he saw an ammunition magazine on the floor next to a bed. The agent proceeded to search the bedroom, recovering a gun, 21 ziplock packages containing a white, rock-like substance, $170 in currency, and additional ammunition. Chemical analysis revealed that the packages contained 2.553 grams of cocaine base. Transcript of Plea Hearing ("Tr.") at 8, United States v. Ford, No. 91–347 (D.D.C. June 2, 1992).

At the time of his arrest on January 10, Ford was already under indictment for a narcotics offense. By superseding indictment filed April 7, 1992, Ford was charged with five narcotics and firearms offenses arising from his two arrests. Count One charged Ford with possession with intent to distribute more than 5 grams of cocaine base on May 14, 1991, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii); Count Two charged

him with possession with intent to distribute cocaine base on January 10, 1992, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); Count Three charged him with using and carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); Count Four charged him, as a convicted felon, with unlawful receipt and possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and Count Five charged him with unlawful receipt and possession of a firearm while under indictment for a felony in violation of 18 U.S.C. § 922(n).

On June 2, the scheduled trial date, Ford entered a plea of guilty to Counts Two and Five. Ford signed a written plea agreement shortly before the hearing. Pursuant to FED. R.CRIM.P. 11, the District Court discussed the plea with Ford at the hearing. The District Court asked Ford if he had read the indictment and understood the charges against him, and whether he had read the plea agreement and understood it. Ford confirmed that he had. The District Court also described the rights that Ford would waive by entering his plea. Tr. 4–7. The Government then made a factual proffer, *in which it omitted the fact that a gun had been recovered from Ford's bedroom.* Tr. 8–9. Ford confirmed that the Government's proffer was consistent with his understanding of the facts. Tr. 9. Finally, the District Court discussed the sentencing implications of the plea with Ford. Tr. 10–11.

Six days later, on June 8, Ford moved to withdraw his guilty plea. In this motion, Ford contended that his decision to plead guilty was ill-informed because, at the time he entered his plea, neither he nor his attorney knew that the District Court had granted his motion to sever.[1] Motion to Withdraw Guilty Plea, *Ford,* No. 91–347 (June 8, 1992). The District Court heard arguments and denied Ford's motion on June 25.

On August 7, Ford's newly retained counsel filed a second motion to withdraw, declaring Ford's innocence and explaining that Ford decided to enter a guilty plea because his previous counsel had misinformed him

---

1. Ford had moved to sever the trial of Count I from the trial of the other four charges against him. The District Court granted this motion on

May 27, 1992. Order, *Ford,* No. 91–347 (May 27, 1992).

about the applicable sentencing range. As a defense, Ford asserted that neither the cocaine nor the weapon recovered from the bedroom belonged to him. Second Motion to Withdraw Guilty Plea at 1–2, *Ford,* No. 91–347 (Aug. 7, 1992). Ford subsequently submitted an affidavit attesting that he did not possess the drugs or the gun found in the bedroom. Ford stated that the bedroom from which the cocaine and gun were recovered was used by his brother and a woman, and that he believed that the cocaine and the gun belonged to his brother because they were found in his bed, not Ford's. In addition, Ford stated that he did not assert this defense previously because he did not want to get his brother in trouble. Affidavit of Ford at 1, *Ford,* No. 91–347 (Sept. 9, 1992). Without entertaining further argument, the District Court denied the second motion on August 14. On September 11, Ford was sentenced to 63 months incarceration and three years of supervised release on both counts, to run concurrently.

On appeal, Ford argues that the District Court abused its discretion in denying his motions to withdraw his guilty plea. We agree as to Ford's second motion, and accordingly vacate the District Court's order.

## II. ANALYSIS

■ Ford filed both of his motions to withdraw prior to sentencing. Therefore, the District Court could permit withdrawal of the plea "upon a showing by the defendant of any fair and just reason." FED.R.CRIM.P. 32(d). Withdrawal of a guilty plea before sentencing is liberally granted, although withdrawal is not granted as a matter of right. *United States v. Russell,* 686 F.2d 35, 38 (D.C.Cir.1982). This court may vacate a trial court's ruling on a motion to withdraw if the defendant can show an abuse of discretion. *United States v. McKoy,* 645 F.2d 1037, 1038 (D.C.Cir.1981).

■ Three factors are particularly relevant to any inquiry whether the trial court abused its discretion in denying a motion to withdraw. First, we must consider whether the defendant has asserted a viable claim of innocence. *United States v. Horne,* 987 F.2d 833, 837 (D.C.Cir.1993); *United States v.*

*Mathis,* 963 F.2d 399, 410 (D.C.Cir.1992); *Russell,* 686 F.2d at 39; *United States v. Barker,* 514 F.2d 208, 220 (D.C.Cir.) (en banc), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). If the motion asserts a legally cognizable defense to the charges, "presentence withdrawal should be rather freely allowed." *Barker,* 514 F.2d at 220.

Second, we must consider whether the delay between the guilty plea and the motion to withdraw has "substantially prejudiced the Government's ability to prosecute the case." *Barker,* 514 F.2d at 222; *see also Horne,* 987 F.2d at 837; *Mathis,* 963 F.2d at 410; *Russell,* 686 F.2d at 39. Thus, if there has been an extensive delay, the defendant's reasons for withdrawing his plea "must meet exceptionally high standards." *Barker,* 514 F.2d at 222; *see also Horne,* 987 F.2d at 837. In the instant matter, the Government has claimed no prejudice to its case by virtue of Ford's belated assertion of innocence.

Third, and most important, we must consider whether the guilty plea was somehow tainted. *Horne,* 987 F.2d at 837; *Mathis,* 963 F.2d at 410. "It should go without saying that the standard [for withdrawal of a plea] is very lenient when the plea was entered unconstitutionally or contrary to Rule 11 procedures. Such pleas should almost always be permitted to be withdrawn, … regardless of whether the movant has asserted his legal innocence." *Barker,* 514 F.2d at 221. Thus, when the defendant can show that the initial plea colloquy was not conducted in "substantial compliance" with FED. R.CRIM.P. 11, the defendant should "almost always" be permitted to withdraw his plea. *United States v. Abreu,* 964 F.2d 16, 18 (D.C.Cir.1992) (per curiam).

We find the first and third factors determinative in this case. Ford asserted his legal innocence in his second motion to withdraw, and, more significantly, has shown that his plea was entered after a substantially defective Rule 11 colloquy.

■ Ford pled guilty to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and possession of a firearm while under indictment

for a felony, in violation of 18 U.S.C. § 922(n). Under both of these statutes, the Government must show that the defendant was knowingly in possession—either constructive or actual—of the illegal items in question. Constructive possession typically requires a showing that the defendant knowingly was in a position or had the right to exercise dominion or control over the item in question. *See, e.g., United States v. Jenkins,* 981 F.2d 1281, 1283 (D.C.Cir.1992). However, in cases in which contraband or firearms are discovered in a place occupied by more than one person, the Government must establish "the likelihood that in some discernible fashion the accused had a *substantial* voice vis-a-vis" the items in question. *Jenkins,* 981 F.2d at 1283 (quoting *United States v. Foster,* 783 F.2d 1087, 1089 (D.C.Cir.1986) (quoting *United States v. Staten,* 581 F.2d 878, 884 (D.C.Cir.1978))) (emphasis added in *Foster*). In other words, the Government cannot rest its case on the mere circumstance that a defendant was close to or had access to the illegal items; there must be "'some action, some word, or some conduct that links the individual to the [illegal items] and indicates that he had some stake in them, some power over them.'" *Foster,* 783 F.2d at 1089 (quoting *United States v. Pardo,* 636 F.2d 535, 549 (D.C.Cir.1980)).

 Ford's defense to the possession charges is that (1) he did not have exclusive dominion and control over the bedroom where the items were found because he shared the bedroom with his brother and a woman; (2) the illegal items recovered from the room probably belonged to his brother because they were found in his brother's bed; and (3) he did not know that the illegal items were in the bedroom. *See* Second Motion to Withdraw at 1–2; Affidavit of Ford at 1. For its part, the Government has not yet proffered evidence linking Ford to the illegal items found in the bedroom beyond mere proximity. Ford's asserted defenses thus refute the charge that he knowingly exercised a "substantial voice" vis-a-vis the gun and the drugs. *See Jenkins,* 981 F.2d at 1283–84 (co-defendant did not have possession of shotgun found in back seat of car in which he was a passenger when Government's only evidence linking him to gun was proximity); *Foster,* 783 F.2d at 1090 (employee of store in which shotgun was found did not have possession of the shotgun when Government's only evidence linking him to gun was proximity); *Pardo,* 636 F.2d at 549 (co-defendant did not have possession of drugs when the Government's only evidence linking him to drugs was his presence in a confined area when a drug transaction was taking place); *United States v. Watkins,* 519 F.2d 294, 298 (D.C.Cir.1975) (co-defendant did not have possession of drugs hidden in bedroom when Government's only evidence linking her to drugs was her presence in the room where the drugs were found, and a few books with her name on them in a hall closet); *United States v. Bonham,* 477 F.2d 1137, 1138–39 (3d Cir.1973) (en banc) (co-defendant did not have possession of heroin hidden in bedroom he shared with half-brother when Government's only evidence linking him to heroin was joint occupancy of room).

More importantly, we also find that the June 2 hearing, in which Ford entered his plea of guilty, was not conducted in substantial compliance with the requirements of Rule 11. Ford points out many deficiencies in the Rule 11 colloquy, most of which are merely technical and need not be addressed, but two of which are sufficiently troubling to remove the Rule 11 colloquy from the realm of substantial compliance. Significantly, Ford claims that the District Court at the plea hearing failed to explain the nature of the charges against him, and failed to establish the factual basis of the charges to which he pled guilty.[2]

---

**2.** The Government argues that Ford is precluded from raising his Rule 11 arguments on appeal, or that those arguments should be reviewed only for plain error, because they were not raised in either of his motions to withdraw. We reject this contention. Ford does not directly contend that there was reversible Rule 11 error, but rather asks us to consider the deficiencies in the Rule 11 exchange in evaluating his claim that it was

an abuse of discretion for the trial judge to deny his second motion to withdraw in which Ford claimed actual innocence. In this latter context, it does not matter whether Ford raised his Rule 11 objections during the colloquy or in his motions to withdraw.

In *United States v. Parra–Ibanez,* 936 F.2d 588 (1st Cir.1991), the First Circuit held that Rule 11

Entry of a plea of guilty is governed by Rule 11 of the Federal Rules of Criminal Procedure, which provides, in relevant part, that "[b]efore accepting a plea of guilty ..., the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, ... (1) the nature of the charge to which the plea is offered." FED.R.CRIM.P. 11(c)(1). This requirement, that the District Court discuss the charges with the defendant and determine that he understands them, is essential to the Court's duty under Rule 11(d), which is to determine that the plea has been voluntarily made before accepting it. FED.R.CRIM.P. 11(d); *McCarthy v. United States,* 394 U.S. 459, 464–65, 89 S.Ct. 1166, 1169–70, 22 L.Ed.2d 418 (1969); *see Henderson v. Morgan,* 426 U.S. 637, 644–45 & n. 13, 96 S.Ct. 2253, 2257 & n. 13 (1976) (noting that a plea cannot be voluntarily made, in the constitutional sense, unless defendant understands the charges against him). Thus, as the Fifth Circuit noted, the defendant's understanding of the crime to which he is admitting guilt is one of the "core considerations" of Rule 11, that "manifestly must lie at the heart of any respectable system for settling (as opposed to trying) criminal charges." *United States v. Dayton,* 604 F.2d 931, 935 (5th Cir.1979) (en banc), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).

Rule 11 also requires the District Court to find a factual basis for the plea before accepting it. FED.R.CRIM.P. 11(f). In other words, the District Court must determine that "the conduct which the defendant admits constitutes the offense charged," and that the Government has evidence from which a reasonable juror could conclude that the defendant was guilty as charged. FED.R.CRIM.P. 11, Notes of Advisory Committee on Rules (1966 Amendment); *see also McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171; *United States v. Washington,* 969 F.2d 1073, 1077 (D.C.Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993); *Abreu,* 964 F.2d at 19.

The record reveals that the District Court's discussion of the charges at the plea hearing was cursory. The District Court asked Ford whether he had agreed to enter a plea of guilty to the charges of "possession with intent to distribute an illegal narcotic" and "possession of a narcotic—possession of a firearm pending an indictment, while an indictment against you is pending." Tr. 5. In addition, the trial judge asked whether Ford had seen, read, discussed with his attorney, and understood the indictment that brought him into court, Tr. 4–5, and whether he had read and understood the plea agreement. Tr. 7. The District Court did not elaborate the charges beyond this brief exchange, and there was some confusion between the District Court and the defense attorney about the actual charges to which Ford was entering his plea. For example, at the end of the hearing, counsel for the defense pointed out to the trial judge that he had accidentally stated that Ford was pleading guilty to Count Four, instead of Count Five. In attempting to correct the error, the trial judge said: "[h]e pleaded to the count involving the committing the *narcotic* offense while he was under indictment, that's 922(n)." Tr. 15 (emphasis added); *see also* Tr. 16. Unfortunately, this did not cure the confusion.

The record also reveals that the District Court did not establish the factual basis of the *firearms charge* before accepting Ford's plea. The Government's factual proffer omitted the fact that a gun was recovered from Ford's bedroom. Tr. 8–9. Ford, when asked, agreed that the factual proffer was accurate. Tr. 9. The District Court did not ask the Government about the location of the gun, and thus the presence of a gun in Ford's bedroom was never asserted at the hearing.

One of the "core considerations" of Rule 11 is to ensure that a defendant understands the charges against him. *Dayton,* 604 F.2d at 935. That consideration was compromised in this case, albeit inadvertently, when the trial judge merely recited the charges without

challenges should not be precluded on appeal if not raised below because Rule 11 procedures safeguard the parties and the "fairness, integrity, [and] public reputation of judicial proceedings."

*Id.* at 593 (internal quotations omitted). In light of our holding here, we need not consider the viability or applicability of this principle to this case.

informing the defendant of the material details of the charges against him, and then merely asked the defendant if he had read and understood the indictment and plea agreement. The potential for harm from such a limited colloquy is that the defendant could easily misunderstand the nature of the charges to which he was pleading or unknowingly plead guilty to a charge when he has not admitted to conduct constituting a criminal violation. *See United States v. Roberts*, 570 F.2d 999, 1011 (D.C.Cir.1977) (noting that "[w]henever the Rule 11 disclosure is incomplete, there is the possibility of a misunderstanding"). The potential for misunderstanding was highlighted in this case when the District Court twice referred to the firearms charge as a narcotics charge, and the Government failed to mention that a gun was recovered from Ford's bedroom. Based on this record, we cannot be certain that Ford understood that he was pleading guilty to a firearms offense involving a specific gun recovered from his bedroom, and cannot be certain that Ford actually admitted that the gun was in his bedroom.

█ In reaching this conclusion, we emphasize that we will not reverse a trial court in its application of Rule 11 except when it has failed to address the Rule's "core inquiries." *Dayton*, 604 F.2d at 940. However, as a corollary to this proposition, "if the initial plea proceeding was not in substantial compliance with Fed.R.Crim.P. 11, then the defendant should almost always be allowed to withdraw his plea." *Abreu*, 964 F.2d at 18. In this case, we reverse because there was no full and clear disclosure of all material details of the charges against the defendant so as to ensure that his guilty plea was knowingly and voluntarily entered.

█ Finally, we note that Ford's request to withdraw his plea and his claim of innocence came two months after the entry of the plea. Generally, this court looks askance at assertions of innocence that come long after a guilty plea has been entered, absent some tenable explanation for the delay. *See McKoy*, 645 F.2d at 1039; *Barker*, 514 F.2d at 222. Ford contends that he was initially reluctant to implicate other members of his

family and decided to enter a plea because his first attorney informed him, mistakenly, that he would receive a very short sentence. Second Motion to Withdraw at 1–2; Affidavit of Ford at 1. Given the circumstances of this case—indicating, in particular, that the initial plea proceeding was not in substantial compliance with Rule 11—we find that it would be fundamentally unfair to deny the appellant's request to withdraw his plea.[3] *See United States v. Watley*, 987 F.2d 841, 848 (D.C.Cir.1993) (vacating District Court order when defendant's plea was entered two months after defective Rule 11 colloquy, the case against defendant was not complex, the Government asserted no prejudice as a result of delay, and there were no co-defendants in the case).

### CONCLUSION

We vacate the judgment of the District Court denying Ford's second motion to withdraw, and remand with instructions that Ford be allowed to plead anew.

*So ordered.*

---

**3.** The Government has not asserted that the delay has prejudiced its case against Ford. Nor are there are co-defendants in Ford's case, so he cannot be accused of delaying his plea withdrawal to gauge the sentence he would receive after trial. *United States v. Loughery*, 908 F.2d 1014, 1017 (D.C.Cir.1990) (noting that defendant prejudiced her motion to withdraw by moving for withdrawal after her co-defendant's sentencing); *McKoy*, 645 F.2d at 1040 & n. 3 (agreeing with the trial judge that the co-defendants' sentences were at the root of defendant's motion to withdraw).