**UNITED STATES of America,
Appellee,**

v.

**Yong Ho AHN, Appellant.**

**No. 99–3149.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 6, 2000.
Decided Nov. 14, 2000.

Jonathan Shapiro argued the cause and filed the briefs for appellant.

Elizabeth H. Danello, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Thomas J. Tourish, Jr., and Robert R. Chapman, Assistant U.S. Attorneys.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Yong Ho Ahn, a Metropolitan Police officer, pleaded guilty to violating 18 U.S.C. § 201(c)(1)(B) by receiving illegal gratuities from massage parlors that were flagrantly violating local law. Ahn appeals from a district court judgment accepting his guilty plea and sentencing him to four months incarceration and two years supervised release. Appellant contends that in light of *United States v. Sun–Diamond Growers,* 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999), the district court erred in finding that his plea had a sufficient factual basis and that he understood the nature of the charges against him. Ahn also argues that the Government breached its duty of good faith and an implied promise of secrecy by leaking information to news media about his arrest, and submits that the district court erred in quashing a subpoena he sought in order to obtain the confidential sources of the reporters who broadcast the story. Finally, Ahn contends that the Government violated the plea agreement by making a witness available at the sentencing hearing and then questioning the witness, when it had expressly promised not to take a position on whether Ahn had obstructed justice.

For reasons more fully set out below, we hold that the district court did not err, and affirm Ahn's conviction and sentence.

## I. BACKGROUND

In early September 1997, Lieutenant Yong Ho Ahn, a fifteen-year veteran of the Metropolitan Police Department of Washington, D.C., entered a massage parlor and informed a person associated with the parlor, a witness cooperating with the Metropolitan Police Department ("CW–1"), that it "was not properly licensed." As Ahn knew, the parlor violated local law by allowing its female employees to provide massages to male customers, *see* D.C.Code § 47–2811, and by serving as a brothel, where male customers could purchase sexual acts from female employees, *see id.* § 22–2722. On September 3, 1997, CW–1 gave Lieutenant Ahn a controlled payment of $1,000. Within the following three months, CW–1 gave Ahn two additional payments—one for $500 and another for $1,500.

In early December 1997, Ahn visited a second massage parlor, which also allowed female employees to provide massages and sexual acts to male customers. At that parlor, Lieutenant Ahn informed another cooperating witness ("CW–2") that the massage parlor "was not properly licensed." On December 23, 1997, CW–2 made a controlled payment of $3,000 to Ahn. The following month, Ahn received another controlled payment of $2,000 from CW–2.

On February 10, 1998, Lieutenant Ahn was arrested on a warrant charging him with receiving a bribe in violation of 18 U.S.C. § 201(b)(2)(C). After a failed plea

attempt and a series of negotiations, he agreed to plead guilty to receiving an illegal gratuity under 18 U.S.C. § 201(c)(1)(B). As part of his plea agreement, Ahn agreed to cooperate with the Government "whenever, wherever, and in whatever form" it deemed appropriate. In exchange, the Government agreed to inform the court of Ahn's cooperation and to abstain from taking a position at sentencing concerning whether Ahn obstructed justice.

On April 28, 1998, while the case was under seal and Ahn was secretly assisting the Government in a sting operation attempting to catch then-Mayor Marion Barry accepting a bribe, two televised news reports described Ahn's arrest. The sting, set for the following day, was quickly aborted. In light of the publicity surrounding his case, Ahn filed a motion to withdraw his plea, contending that by leaking information about his case the Government had breached its implied promise to maintain the secrecy of his cooperation. The district court denied Ahn's motion, finding that the plea agreement contained no enforceable promise of secrecy and that, even if there had been such a promise, Ahn failed to carry his burden of proving that the Government breached it.

After the plea hearing, but before sentencing, the Supreme Court decided *United States v. Sun–Diamond Growers,* 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999), which interpreted the illegal gratuity statute. In light of the Court's interpretation, Ahn filed a second motion to withdraw his plea, this time arguing that the Government's factual proffer was insufficient to establish his guilt. Again, the district court denied his motion.

At Ahn's sentencing hearing, the district court considered allegations included in the presentence report that Ahn asked CW–1 to tell the FBI that the money he had taken had been returned. This allegation raised questions about whether Ahn's sentence should be enhanced for obstructing justice. At the hearing, the Govern-

ment made a witness available to testify about the facts underlying the allegation. Then, at the court's direction, the Government questioned the witness. Ahn objected based on the Government's promise not to take a position on whether he had obstructed justice, but the court overruled him. Ultimately, after finding that Ahn had obstructed justice and granting Ahn a downward departure for his substantial assistance, the court sentenced Ahn to four months incarceration and two years of supervised release and imposed a special assessment of $100.

On appeal, Ahn contends that: (1) his guilty plea was taken in violation of Rule 11 of the Federal Rules of Criminal Procedure; (2) the district court erred in finding that his plea agreement did not contain an implicit promise of secrecy and that the Government did not breach its duty of good faith; (3) the district court improperly granted the two television reporters' motion to quash Ahn's subpoena; and (4) the Government breached the plea agreement by taking a position in favor of a sentence enhancement for Ahn's obstructing justice. We address each of these issues in turn.

## II. ANALYSIS

### A. The *Sun–Diamond* Decision

A district court "may" grant a defendant's motion to withdraw a guilty plea "if the defendant shows any fair and just reason." FED.R.CRIM.P. 32(e). Although presentence withdrawal motions should be "liberally granted," they are "not granted as a matter of right." *United States v. Ford,* 993 F.2d 249, 251 (D.C.Cir.1993); *United States v. Loughery,* 908 F.2d 1014, 1017 (D.C.Cir.1990).

On appeal, a district court's denial of a motion to withdraw will be vacated only if "the defendant can show an abuse of discretion." *Ford,* 993 F.2d at 251. In determining whether the trial court abused its discretion, this Court considers three

factors: (1) whether the defendant "asserted a viable claim of innocence"; (2) whether the delay between the plea and the motion to withdraw "substantially prejudiced the Government's ability to prosecute the case"; and (3) "whether the guilty plea was somehow tainted." *Id.* (internal quotes omitted). Because Ahn does not claim to be innocent and the Government has not argued that the delay would prejudice its ability to prosecute Ahn, we focus our attention on the third factor.

■ If a guilty plea is tainted—that is, if it is " 'entered unconstitutionally or contrary to Rule 11 procedures' "—a court's assessment of a motion to withdraw the plea is " 'very lenient.' " *Id.* (quoting *United States v. Barker,* 514 F.2d 208, 221 (D.C.Cir.1975) (en banc)). If the plea colloquy was not conducted in "substantial compliance" with Rule 11, then the defendant should " 'almost always' be permitted to withdraw his plea." *Id.* (quoting *United States v. Abreu,* 964 F.2d 16, 18 (D.C.Cir. 1992) (per curiam)).

Ahn claims that his plea was tainted in two respects. First, he argues that the Government's proffer provided an insufficient factual basis for the illegal gratuity charge. Second, he contends that his plea was involuntary because he lacked an understanding of the nature of the charge against him. We reject both claims.

Each of Ahn's claims hinges on the meaning of the illegal gratuity statute. The statute makes it a crime for a public official to receive or accept "anything of value personally for or because of any official act performed or to be performed by such official . . . ." 18 U.S.C. § 201(c)(1)(B). An official act is defined as "any decision or action on any . . . matter . . . which may at any time be pending . . . in such official's official capacity, or in such official's place of trust . . . ." *Id.* § 201(a)(3).

■■ Shortly after Ahn pleaded guilty, the Supreme Court decided *United States v. Sun–Diamond Growers,* 526 U.S. 398,

119 S.Ct. 1402, 143 L.Ed.2d 576 (1999), which interpreted the illegal gratuity statute's "for or because of any official act" language. The *Sun–Diamond* Court held that an illegal gratuity could not be proved by merely demonstrating that a thing of value "was given because of the recipient's official position." *Id.* at 400, 119 S.Ct. 1402. Rather, the Government must establish a link between the gratuity and "a specific 'official act' for or because of which it was given." *Id.* at 414, 119 S.Ct. 1402; *accord United States v. Schaffer,* 183 F.3d 833, 844 (D.C.Cir.1999). In other words, a violation requires that "some particular official act be identified and proved." *Sun–Diamond,* 526 U.S. at 406, 119 S.Ct. 1402. Following *Sun–Diamond,* this Court held that an illegal gratuity "can take one of three forms": (1) a reward for past action, (2) an enticement to maintain a position already taken, or (3) an inducement to take or refrain from some future official action. *Schaffer,* 183 F.3d at 841–42.

### 1. Sufficiency of the Factual Proffer

■ Ahn argues that the Government failed to proffer any facts that would demonstrate a link between the payments he received and any official act. He suggests that, instead, the Government's proffer only establishes that the massage parlors paid him solely because of his position as a police lieutenant.

■ According to Rule 11, when considering a plea, the trial court must "mak[e] such inquiry as shall satisfy it that there is a factual basis for the plea." FED. R.CRIM.P. 11(f). To establish a satisfactory factual basis, the Government must proffer " 'evidence from which a reasonable juror could conclude that the defendant was guilty as charged.' " *In re Sealed Case,* 153 F.3d 759, 771 (D.C.Cir. 1998) (quoting *Ford,* 993 F.2d at 253). Accordingly, the trial court may draw reasonable inferences from the facts proffered by the Government. *See United States v. Graves,* 106 F.3d 342, 345 (10th Cir.1997).

The Government's factual proffer established that Ahn went to the massage parlors to tell the cooperating witnesses that their parlors were not properly licensed. As a police officer, Lieutenant Ahn had a duty to report the licensing violations and to take "such immediate and proper police action as the circumstances may demand." METROPOLITAN POLICE DEP'T GEN. ORDER 401.4, Part I, § D(2). The proffer explicitly described how Ahn accepted payments from two cooperating witnesses "associated with The Spa[s]" rather than reporting the violations. The proffer expressly defined "The Spa[s]" as "business[es] whereby male customers purchase massages from female spa workers ... [and] may also purchase sexual acts." In the proffer, the Government identified five different payments from the cooperating witnesses, who were, as the proffer makes clear, associated with "The Spa[s]," which by the proffer's own unambiguous definition were engaged in illegal activity. Consequently, the only conclusion that can be drawn from the proffer is that while Lieutenant Ahn received payments from the cooperating witnesses, the massage parlors continued to engage in illegal conduct and Ahn failed to take any "immediate and proper police action."

Although Appellant is correct that the proffer does not explicitly state a *link* between the payments and an official act, it does provide sufficient " '*evidence* from which a reasonable juror could conclude that the defendant was guilty as charged.' " *In re Sealed Case,* 153 F.3d at 771 (emphasis added) (quoting *Ford,* 993 F.2d at 253). A reasonable juror could interpret the facts proffered by the Government as demonstrating that the cooperating witnesses paid Ahn as a reward for his not reporting the parlors' violations when he first notified them that they were not properly licensed, as an enticement to continue failing to report them, and as an inducement for not reporting them in the future. Under all of these reasonable inferences, the Government has proffered a sufficient factual basis to establish the link

between the payments and an identified official act, or in Lieutenant Ahn's case, an official failure to act. *See Sun–Diamond,* 526 U.S. at 414, 119 S.Ct. 1402; *Schaffer,* 183 F.3d at 841–42.

We find instructive our recent decision in *In re Sealed Case,* 153 F.3d 759 (D.C.Cir.1998). In that case, the defendant pleaded guilty to violating 18 U.S.C. § 924(c)(1), which establishes minimum sentences for anyone who "uses or carries a firearm" during or in relation to a drug trafficking crime. Before the defendant was sentenced, however, the Supreme Court held that to establish the "use" of a firearm the Government must prove that it was actively employed. *See Bailey v. United States,* 516 U.S. 137, 144, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The *Sealed Case* defendant sought to withdraw his plea based on this holding, arguing that the Government's proffer had not established that he had used or carried a weapon. Nevertheless, the proffer did demonstrate that when police officers told the defendant to show his hands, he moved them "away from his body and toward the corner," where the police found a gun moments later. *In re Sealed Case,* 153 F.3d at 772. We held that those facts were sufficient for a reasonable juror to find that the defendant had tossed away the gun and therefore was guilty of "carrying." *See id.* Likewise, in Ahn's case, the Government did not explicitly state that Ahn received the payments for or because of an official act, but the facts it proffered were sufficient for a reasonable juror to infer such a link.

In contrast, in cases in which courts have held that there was an insufficient factual basis for a defendant's plea, the government has offered no evidence to support an element of the charge. For example, the defendant in *United States v. Ford* pleaded guilty to possessing a weapon while under indictment for a felony, *see* 18 U.S.C. § 922(n), and the government "omitted the fact that a gun was recovered

from [the defendant's] bedroom"—the key fact necessary to establish that he possessed a gun. *Ford*, 993 F.2d at 253.

Similarly, in *United States v. Sawyer*, 74 F.Supp.2d 88 (D.Mass.1999), on which Appellant relies, the government's proffer was insufficient to establish a factual basis for a violation of a Massachusetts illegal gratuity statute similar to the one at issue here.[1] In *Sawyer*, the government only demonstrated that the defendant gave "free golf and other entertainment to Massachusetts legislators." *Id.* at 93 n. 6. The court properly ruled that the government failed to allege any link between the entertainment and an "identifiable, specific, official act." *Id.* at 103. More significantly, however, the government failed to identify *any* official act, instead wholly relying on the fact that gifts were given to state legislators.

Ahn argues that in his case, as in *Sawyer*, the Government believed that it could prosecute him based solely on his status as a police officer. Even if Ahn is correct, this belief is not fatal because the Government here, unlike the prosecution in *Sawyer*, proffered sufficient evidence linking the payments Ahn received to an official act. The record reveals that the district court substantially complied with the dictates of Rule 11(f), that the factual proffer provided sufficient evidence to establish a violation of the illegal gratuity statute, and, therefore, that the court did not abuse its discretion in denying Ahn's motion to withdraw his guilty plea.

### 2. Voluntariness of the Plea

Ahn next contends that his plea was involuntary because he did not understand the nature of the charge against him. He suggests that, at the time of his plea,

he understood that he was being charged with accepting payments because of his position as a police officer, not, as *Sun-Diamond* later required, because of any official act.

Before accepting a guilty plea, the trial court must engage in a colloquy with the defendant to determine that he understands "the nature of the charge to which the plea is offered," FED.R.CRIM.P. 11(c)(1), and, therefore, that it is voluntary, *see id.* 11(d). For a plea to be voluntary under the Constitution, a defendant must receive " 'real notice of the true nature of the charge against him.' " *United States v. Dewalt*, 92 F.3d 1209, 1211 (D.C.Cir. 1996) (quoting *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (internal quotes omitted)). Real notice is that which is "sufficient to give the defendant 'an understanding of the law in relation to the facts' of his case." *Id.* at 1212 (quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). In assessing whether the defendant has such an understanding, the record of the plea colloquy must, based on the totality of the circumstances, " 'lead a reasonable person to believe that the defendant understood the nature of the charge.' " *Id.* (quoting *United States v. Frye*, 738 F.2d 196, 201 (7th Cir.1984), and citing *United States v. Musa*, 946 F.2d 1297, 1304 (7th Cir.1991)); *see also Roberson v. United States*, 901 F.2d 1475, 1477 (8th Cir.1990) (explaining that a defendant is "entitled to relief if the totality of the circumstances indicates that he did not understand the nature of the charges to which he entered a plea of guilty").

Ahn's contention rests solely on the following statements made by the Government during the plea hearing:

---

[1]. In *Sawyer*, the defendant pleaded to guilty to mail fraud in violation of 18 U.S.C. §§ 1341, 1346. *See Sawyer*, 74 F.Supp.2d at 92 & n. 5. To establish federal mail fraud as alleged in that case, the prosecution was required to prove that the defendant used the postal system to violate Massachusetts law. The prosecution stated that the defendant had

violated the state's illegal gratuity statute, which, like the federal statute, prohibits people from giving a public official—and a public official from receiving—anything of substantial value "for or because of any official act performed or to be performed." MASS. GEN. LAWS ch. 268A, § 3.

I would further proffer to the Court that [defense counsel] and I have had a number of discussions about the illegal gratuity and bribery statute. And we have discussed that under certain interpretations, it is unnecessary to show the payments were earmarked for a particular purpose, but rather payments can be made to an individual because of his capacity or his particular status within the Government.... Certainly in this case the Government has discussed with counsel is not charging Mr. Ahn with a quid pro quo, but rather more of a theory of his job.

Transcript of Plea Hearing, Mar. 11, 1998, at 26. Appellant argues that these statements suggest that Ahn understood that the Government only needed to prove that he accepted payments as a public official. When viewed in isolation, his argument seems colorable. But when considered in light of the record of the plea hearing as a whole, it falls short.

Initially, in considering the Government's statement itself, it appears possible that the prosecutor and defense counsel agreed that the Government only needed to establish that Ahn received payments as a police officer. Yet, even the Government's statement is inconclusive. In the first part of its statement, the prosecution only said that "under certain interpretations" the Government did not need "to show the payments were earmarked for a particular purpose." It never said that *in this case* the Government need not show such a purpose. In fact, as explained above, the Government proffered sufficient facts to reasonably demonstrate a particular purpose—that Ahn did nothing about the massage parlors' flagrant violations of the law.

The second half of the prosecution's statement is equally inconclusive. The Government correctly points out that it was "not charging Mr. Ahn with a *quid pro quo*"—if it had been, then it would have been charging him under the bribery statute, a charge to which Ahn already

refused to plea guilty. *Cf. Sun–Diamond,* 526 U.S. at 405, 119 S.Ct. 1402 (explaining that, in contrast with an illegal gratuity, "only a bribe requires proof of a *quid pro quo*"); *Schaffer,* 183 F.3d at 841 (noting that the bribery and illegal gratuity statutes differ because "bribery requires a *quid pro quo*"); *United States v. Tomblin,* 46 F.3d 1369, 1379 (5th Cir.1995) ("Under the bribery statutes, the government must prove a quid pro quo."). Although it is plausible to read the "theory of the job" statement to mean that the Government was charging Ahn with receiving a payment because of his position, such a reading ignores the contrast the prosecution seemed to be drawing between "the illegal gratuity and bribe statute." In context, a reasonable person could have understood that the prosecution's reference to a "theory of the job" meant that the Government was charging Ahn for receiving payments that were linked to his failure to uphold the duties of his job—that is, his failure to report the licensing violations.

The critical inquiry is whether Ahn understood the nature of the charges against him. The record of the plea hearing reveals that a reasonable person would have believed that he did. Throughout the hearing, the court asked Ahn a series of questions focused on the nature of the crime. Significantly, at no point during this colloquy did the court or Ahn state that he was being charged merely for receiving payments because he was a police officer.

First, the district court asked whether Ahn "did either seek, or receive, or accept, or agree to receive something of value from two witnesses, who are cooperating with the Government ... *because of formal official acts performed by you.*" Transcript of Plea Hearing, Mar. 11, 1998, at 14 (emphasis added). Moments later, after giving Ahn a chance to compose himself, the Judge again asked if he "understood the nature of the charge against [him], ... the receipt of illegal gratuities, *something of value to perform an official*

*act or not." Id.* at 15 (emphasis added). Ahn responded, "I understand, Judge." *Id.*

Later in the colloquy, the Judge asked Ahn, "[Y]ou are charged . . . with receipt of illegal gratuities in that either you received directly or indirectly or demanded and/or agreed to receive, accept cash from two individuals *because of official acts to be performed or not performed by you*; is that true, sir?" *Id.* at 23 (emphasis added). Ahn answered, "Yes, Your Honor." *Id.* at 24.

In each of these exchanges, the court spoke about Ahn's receiving payments for performing official acts, not for being a public actor, and in each exchange, Ahn replied that he understood. Based on this colloquy, a reasonable person could believe that Ahn understood the relationship between the law and the facts.

Cases in this Circuit that have held that a defendant did not understand the nature of the charges to which he pleaded guilty were based on substantially more compelling circumstances than the instant case. In *Ford*, the district court did not "elaborate the charges beyond" asking the defendant whether he had seen and read the indictment, discussed it with his attorney, and understood it. *Ford*, 993 F.2d at 253. In addition, the court referred to the wrong charge twice and neglected to "inform[ ] the defendant of the material details of the charges against him." *Id.* at 254. In *United States v. Dewalt*, 92 F.3d 1209, 1212 (D.C.Cir.1996), the court never mentioned that the defendant was pleading guilty to a charge concerning possession of a weapon. Furthermore, the court only asked whether the defendant had received a copy of and understood the indictment, not even asking whether he had read it. *See id.*; *see also Henderson v. Morgan*, 426 U.S. 637, 642–43, 647, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976) (holding that defendant's plea to second degree murder charges was involuntary when he was a nineteen-year-old man with "substantially below average intelligence," the trial court had not discussed the elements of the crime, and the trial court had made no reference to the requirement that the defendant must have intended to cause the victim's death).

In light of the record before us, it reasonably appears that Ahn understood the nature of the charges against him and therefore that his plea was voluntary. Accordingly, we hold that the trial court did not abuse its discretion in denying Ahn's motion to withdraw his plea.

### B. The Publicity of Ahn's Case

After two television stations broadcast reports detailing Ahn's arrest, Ahn moved to withdraw his plea, claiming that the Government had breached the plea agreement by leaking information to the reporters. The district court denied this motion, ruling that Ahn had not proved the Government expressly or impliedly had promised to keep Ahn's cooperation secret, that Ahn failed to establish that the Government had leaked the information, and that any harm to Ahn was speculative. Ahn appeals from this denial.

 We review a district court's factual determinations concerning a plea agreement, including its determination of whether a breach occurred, for clear error. *See United States v. Pollard*, 959 F.2d 1011, 1023–24 (D.C.Cir.1992). In considering whether a plea agreement has been breached, we look to principles of contract law. *See United States v. Jones*, 58 F.3d 688, 691 (D.C.Cir.1995). "Although reducing an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement creates a presumption that the agreement is integrated, the ultimate determination of integration is a question of fact to be determined in accordance with all relevant evidence." *Bowden v. United States*, 106 F.3d 433, 439–40 (D.C.Cir.1997) (cites and internal quotes omitted). Likewise, as in all contracts, plea agreements are accompanied by "an implied obligation

of good faith and fair dealing." *Jones*, 58 F.3d at 692. In the context of plea agreements, the defendant maintains the burden of proving that the agreement has been breached. *See United States v. Kilroy*, 27 F.3d 679, 684 (D.C.Cir.1994).

On appeal, Ahn argues that his plea agreement included an implied promise by the Government that it would maintain the secrecy of his arrest. According to Ahn, the Government breached this promise by leaking the circumstances of his arrest and plea to two television reporters. Ahn also alleges that the Government violated its duty of good faith through the leak.

■ It is clear from the record that Ahn desired to keep his plea and cooperation secret in order to shield himself, his family, and the Korean community. The Government's desire for secrecy is equally clear—secrecy was imperative for successfully executing the sting on then-Mayor Marion Barry. Nevertheless, as the district court found, these desires do not constitute implied promises.

■ Ahn acknowledges that a promise of secrecy was not expressed in the plea agreement. The agreement did, however, include an integration clause, which specifically stated that · no other agreements or promises. existed between the parties. Standing alone, such a clause would be strong evidence that no implied promises existed—after all, integration clauses "establish that the written plea bargain was 'adopted by the parties as a complete and exclusive statement of the terms of the agreement.'" *United States v. Fentress*, 792 F.2d 461, 464 (4th Cir. 1986) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 210 (1981)); *accord United States v. Hunt*, 205 F.3d 931, 935 (6th Cir.2000) (holding that a merger clause "normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself"); *United States v. Alegria*, 192 F.3d 179, 185 (1st Cir.1999)

("Where, as here, an unambiguous plea agreement contains an unqualified integration clause, it normally should be enforced according to its tenor."); *United States v. Doyle*, 981 F.2d 591, 594 n. 3 (1st Cir.1992) (explaining that this rule "has particular applicability when, as in this case, the plea agreement itself specifically states that 'there are no further or other agreements, either express or implied,' other than those explicitly set forth in the document").

But the integration clause does not stand alone; there is substantial evidence that the agreement did not contain an implied promise of secrecy, the most damning of which comes from the Appellant himself. In accepting the agreement, Ahn "reaffirm[ed] that absolutely no promises ... have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement." At the plea hearing, Ahn again recognized that no promise had induced him to plead guilty other than those promises made in the plea agreement. *See* Transcript of Plea, Mar. 11, 1998, at 22.

As a veteran of the police force represented by experienced defense counsel, Appellant was aware that he could have bargained for specific terms in the plea agreement. Yet he knew that secrecy was not an explicit term. In fact, he agreed to a merger clause stating that there were no other promises made. During the hearing on the withdrawal motion, there was no testimony from the law enforcement officers who investigated Ahn's crime that the Government would—or could—guarantee secrecy to him. *See, e.g.*, Transcript of Proceedings on Defendant's Motion to Withdraw Guilty Plea, Oct. 6, 1998, at 110. Likewise, the FBI translator who spoke to Ahn when he was arrested did not know of any such promise. *See* Transcript of Proceedings on Defendant's Motion to Withdraw Guilty Plea, Oct. 8, 1998, at 164.

■ Based on this record, the district court found that the Government had not impliedly promised Ahn that it would guar-

antee his cooperation would be kept secret. Because the defendant failed to carry his burden of proof, these findings were not in clear error. Certainly, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Yet, "[w]hile the government must be held to the promises it made, it will not be bound to those it did not make. To do otherwise is to strip the bargaining process itself of meaning and content." *Fentress,* 792 F.2d at 464–65.

■ The district court likewise did not plainly err in finding that Ahn failed to carry his burden of proving that the Government caused the leak and consequently breached its obligation of good faith. All of the agents who had access to the information testified under oath or by affidavit that they did not divulge anything about Ahn's case to the media. Ahn failed to present a single witness or any evidence to contradict the agents' sworn statements. As the district court noted, numerous people outside the prosecution team could have given the information to the television reporters, from police officers in Ahn's district who knew about the massage parlor investigation, to massage parlor operators who "knew about Mr. Ahn," Transcript of Proceedings on Defendant's Motion to Withdraw Guilty Plea, Oct. 6, 1998, at 124, to court personnel who had access to information about Ahn's case.

■ Ahn contends that only one way exists for him to prove that the Government caused the leak and thereby breached its duty of good faith: by subpoenaing the reporters to reveal their sources. When Ahn sought to subpoena the reporters, they filed a motion to quash arguing that reporters possess a qualified privilege not to disclose confidential sources. *Cf. Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (addressing whether requiring reporters to testify be-

fore grand juries concerning their confidential sources' criminal conduct violates the First Amendment). The district court found that the reporters' testimony was not "essential and crucial" to Ahn's case and was not relevant to determining Ahn's guilt or innocence. Therefore, the court concluded that Ahn had not demonstrated that the reporters' qualified privilege should be overcome. In granting the motion to quash, the district court did not focus on the government's duty of good faith, yet it was plainly aware of that duty. Because we agree that Ahn failed to carry his burden, we hold that the district court did not make an error of law or abuse its discretion in granting the reporters' motion.

## C. The Sentencing Hearing

■ Ahn's final contention stems from his sentencing hearing, during which, he argues, the Government breached its plea agreement. According to the presentence report, Ahn approached CW–1 and asked her to tell the FBI that Ahn had returned the payments he had received. As a result, Ahn faced the possibility of having his sentence enhanced for obstructing justice. *See* UNITED STATES SENTENCING GUIDELINES § 3C1.1.

In the plea agreement, the Government had promised Ahn that it would not take a position on whether he should receive an obstruction enhancement. At the sentencing hearing, Appellant's counsel pointed to this provision of the agreement, suggesting that the court would have no evidence on which to base such an enhancement. The Government responded by informing the court that it could "make a case agent available to the Court should the Court want to hear that agent" testify. The court assented, stating that it wanted to "hear from the agent." The Government then asked, "Does the Court wish the prosecutor to inquire?" The court did, so the Government questioned the agent about the allegations in the presentence report.

Appellant now argues that the Government breached the plea agreement by taking a position on the obstruction enhancement. According to Ahn, the Government, while not explicitly advocating an enhancement, effectively took a position by not only questioning the agent, but "rehearsing" that testimony before the hearing. This argument is unpersuasive.

 Determining whether a plea agreement was breached "presents a mixed question of law and fact in which the factual aspects usually predominate." *Pollard,* 959 F.2d at 1023. Accordingly, we review the district court's legal conclusions de novo and its factual findings for clear error. *See id.* Of course, the district court is "in the best position to determine whether the government presented an argument that, perhaps subtly, exceeded the bounds of the agreement." *Id.* Therefore, in cases such as the one before us we employ a more deferential standard of review.

At Ahn's sentencing hearing, the Government had a duty to provide relevant information about whether Ahn obstructed justice, even though it had agreed not to take a stand on whether he should receive a sentence enhancement. *See United States v. Mata–Grullon,* 887 F.2d 23, 24 (1st Cir.1989) (per curiam) ("[T]he government must bring all relevant facts to the judge's attention."); *United States v. Perrera,* 842 F.2d 73, 75 (4th Cir.1988) (explaining that the Government has "a duty to bring all relevant information ... to the court's attention at the time of sentencing"). Under the circumstances, we hold the Government acted appropriately in informing the court that a witness was available to recount the facts underlying the presentence report. *Cf. United States v. Griffin,* 816 F.2d 1 (D.C.Cir.1987).

Furthermore, the prosecution did not violate the plea agreement by questioning the witness as instructed by the court. *Cf. United States v. Goodman,* 165 F.3d 169, 173 (2d Cir.1999). The court specifically directed the Government to "just ask [the witness] the basic questions." By limiting its questions to factual material, the Government merely facilitated the agent's providing the court with relevant background on whether Ahn obstructed justice. As the court explained at the sentencing hearing, the prosecution's questioning simply allowed the court "to find out what happened."

The court undoubtedly understood the nature and purpose of this questioning. Throughout the hearing, it repeatedly recognized that the Government was taking no position on the obstruction enhancement. *See, e.g.,* Transcript of Sentencing, Nov. 16, 1999, Record Material for Appellee at 7 (recognizing that the Government "agreed not to take a position"); *id.* at 12 ("The Government takes no position."); *id.* at 13 ("[Y]ou're [i.e., the Government] not taking a position."). Additionally, the court unambiguously declared that whether Ahn's sentence would be enhanced was "strictly up to the Court to decide." *Id.* at 12; *see also id.* at 19 (explaining that the court would "make an independent judgment" on the enhancement). Like the trial court in *United States v. Griffin,* "the District Court was clearly informed of the terms of the plea agreement and of what the government's recommendation on penalty was to be." *Griffin,* 816 F.2d at 7. Accordingly, the court did not clearly err in allowing the Government to make a witness available to recount the facts of Ahn's obstruction, and the Government did not breach the plea agreement by questioning that witness.

### III. CONCLUSION

For the reasons stated above, the district court's judgment is

*Affirmed.*